UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOSEPH WILDER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EVENFLO COMPANY, INC.<br><br>Defendant. | Case No.: 3:20-cv-61<br><br><br>CLASS ACTION COMPLAINT<br>JURY TRIAL DEMANDED |

Plaintiff Joseph Wilder ("Plaintiff") on behalf of himself and all others similarly situated, hereby submits the following Class Action Complaint ("Complaint") against Defendant Evenflo Company, Inc. ("Defendant" or "Evenflo"), and upon personal knowledge as to his own acts and status, and upon investigation of counsel and information and belief as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1. Evenflo produces products for parents and small children, ranging from strollers, car seats, baby safety gates, high chairs, bottles, and breast pumps, among others.

2. Evenflo advertises itself prominently as a producer of "safe" children's products, including representing prominently that "SAFETY IS OUR #1 PRIORITY."

3. One of the products that Evenflo produces is the "Big Kid" car seat (the "Car Seat"), marketed as being safe for children that weigh between 30 and 110 pounds.

4. Plaintiffs bring this lawsuit against Evenflo on behalf of themselves and a Nationwide Class and a Kentucky Subclass of all other similarly situated purchasers of Big Kid

car sears in the United States, alleging claims of beach of express warranty, unjust enrichment, and the Kentucky Consumer Protection Act, Ky. Rev. Stat. § 367.100 *et seq.*

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Evenflo's state of citizenship, which is Ohio.

6. This Court has personal jurisdiction over Evenflo because a substantial portion of the wrongdoing alleged in this Complaint took place in the Ohio and because Evenflo has its principal place of business in and is authorized to do business in Ohio.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Evenflo resides in this District, many of the acts and transactions giving rise to this action occurred in this District and because Evenflo is subject to personal jurisdiction in this District.

## PARTIES

*Plaintiff*

8. Joseph Wilder is a resident of the Commonwealth of Kentucky, residing in Independence.  On or about July 2018, Plaintiff Wilder purchased two Evenflo Big Kid LX car seats from a Walmart in Fort Wright, Kentucky, paying approximately $40 for each.  Plaintiff Wilder purchased the Evenflo Bid Kid LX car seats for use by his son, then 38 lbs.  Plaintiff Wilder purchased the Evenflo Big Kid LX car seats after reading the packaging which included representations that the Big Kid LX was safe for children who weighed as little as 30 pounds, that "SAFETY IS OUR #1 PRIORITY," and that it was "Side Impact Tested."  Plaintiff Wilder

would not have purchased the Evenflo Big Kid LX or would have paid less for it had he known that this language was unfair, false, misleading, or deceptive.

*Defendant*

9. Evenflo Company, Inc. is a Delaware corporation with its principal place of business listed as 225 Byers Road, Suite #2, Miamisburg, Ohio.

## FACTUAL ALLEGATIONS

*The Evenflo Big Kid Car Seat*

10. Evenflo produces and markets a line of car booster seats called the "Big Kid" car seats (the "Car Seats"), which it contends are intended for children between 30 and 110 pounds. A typical example of the external packaging is shown below:



3

11. Along with a conspicuous badge in the top right corner of the front of the box which states, "30-110 lbs," the Car Seat box contains a prominent representation that "SAFETY IS OUR #1 PRIORITY."

12. Further, on all Car Seat boxes, the second column from the left below the "SAFETY IS OUR #1 PRIORITY" banner states that the car seat has been "Side Impact Tested."

13. Evenflo has produced and marketed the Car Seats for at least 15 years. Until approximately February of 2020 (coincident with the release of the ProPublica article discussed *infra*), Evenflo marketed the Big Kid line of car seats as being safe and appropriate for children weighing as little as 30 pounds.[1]

14. Evenflo's website has been updated to show that the Car Seat is for children between 40 and 110 pounds, though boxes and installation manuals still on store shelves state that the Car Seat is still appropriate for children weighing as little as 30 pounds.

15. Evenflo markets the Big Kid line of car seats prominently as "Side Impact Tested: Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards."[2]

16. This labelling implies that Evenflo has been tested and found to meet federal safety standards for side impact testing. However, neither the National Highway Transportation Safety Administration, nor any other federal agency has *any* required, or even standard, test for side impact collisions for child seats.[3]

***ProPublica Exposes Evenflo's Fraudulent Conduct***

---

[1] *See, e.g.*, http://web.archive.org/web/20051230170510/http://www.evenflo.com:80/pr/bo/prbo.phtml and http://web.archive.org/web/20180205163841/https://www.evenflo.com/car-seats/big-kid/31911431.html, last accessed February 13, 2020.
[2] https://www.evenflo.com/car-seats/big-kid/31911431.html, last accessed February 13, 2020.
[3] *See* https://www.consumerreports.org/cro/carseats/child-seat-side-impact-protection, last accessed February 13, 2020.

17. On February 6, 2020, ProPublica published an article (the "Report") exposing the fact that Evenflo has known for years that its car seats are unsafe for use by all children, though those weighing less than 40 pounds face additional risk.[4]

18. ProPublica reported that Evenflo knew internally at least as early as 2012 that its Car Seats were unsuitable for children under 40 pounds, but in the interests of maintaining a competitive position with its main competitors, decided to continue marketing the Car Seats as appropriate for children under 40 pounds.

19. The report stated that a safety engineer at Evenflo, Eric Dahle, made a recommendation to "high-ranking executives" in February 2012 to stop marketing the seat for children under 40 pounds and was told, in response, that the suggestion was "vetoed."[5]

20. When further discussed later in 2012, McKay Featherston, who was the vice president of marketing and product development responded, ""Why are we even talking about this? I have looked at 40 lbs for the US numerous times and will not approve this."[6]

21. ProPublica further detailed Dahle's efforts:

> That February, Dahle, the company's top engineer for boosters, urged his colleagues to increase the minimum weight in the U.S. to 40 pounds and the minimum age to 4 for Evenflo boosters. In a PowerPoint presentation, Dahle wrote that there is an "increased risk of injury" for children between 3 and 4 riding in boosters instead of seats with harnesses because they are immature and may not sit properly. "Keeping the seat at 30 lbs encourages parents to transition them earlier because they can, and the booster is a less expensive option," he wrote.
>
> Evenflo should discourage early transitions, Dahle wrote. A harnessed seat, he said, "is the better option. We should encourage that behavior by modifying the weight rating to 40 lbs." He added, "To overcome the misuse, we should follow the NHTSA Guidelines and increase the age rating to 4 yrs old also."

---

[4] *See* https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety, last accessed February 13, 2020.
[5] *Id.*
[6] *Id.*

5

> To bolster his suggestions, Dahle sent his colleagues a 2010 federal report on booster seat effectiveness. Dahle highlighted the most important takeaway of this study, which looked at a decade of crash data: that 3- and 4-year-old children had a reduced risk of injury in crashes when they were using harnessed seats rather than boosters and that early graduation to boosters may "present safety risks." Another section Dahle highlighted said that children should remain in harnessed seats until they are 4 or weigh 40 pounds and that harnessed seats may offer more side support and "better containment" for smaller children in crashes.
>
> In a meeting days after Dahle sent his report, McKay Featherstone, then a senior marketing director at Evenflo, shot down Dahle's weight recommendation, records show. In what Dahle described in a deposition as a "corporate decision," the company raised the minimum age to 4 but still said the seat was safe for kids weighing as little as 30 pounds.
>
> Dahle reflected on that decision in an email to a colleague when the notion of raising the weight to 40 pounds came up again six months later. "McKay vetoed that earlier this year," Dahle wrote. "After much discussion he was not persuaded."[7]

22. The Report further notes that both the Canadian government and the American Academy of Pediatrics recommends such booster car seats only for children over 40 pounds, stating, "Evenflo has run afoul of Canada's tighter rules. Its booster seats have been recalled three times there, most recently in 2012, for labeling that said a child could use the seat at 30 pounds or less."[8]

23. Additionally, the Report noted that, in apparent response to pressure from lawsuits, major competitor Dorel in 2016 changed its labelling to market its competitor seats to only children weighing over 40 pounds.

24. More damning, however, is the fact that Evenflo portrays the Car Seats as well-suited for side impacts when, in fact, they are not. As ProPublica reported:

> On its website, Evenflo told parents those tests were rigorous, simulating realistic side-impact crashes, which were responsible for more than a quarter of deaths of

---

[7] *Id.*
[8] *Id.*

6

children under 15 killed in vehicle collisions in 2018. While less common than head-on crashes, side impacts are more likely to result in serious injuries in part because there's only a door separating the passenger from the intruding vehicle.

In reality, Evenflo tests were anything but stringent, internal company documents show. The company's tests show that when child-sized crash dummies seated in Big Kid boosters were subjected to the forces of a T-bone collision, they were thrown far out of their shoulder belts. Evenflo's top booster seat engineer would later admit in a deposition if real children moved that way, they could suffer catastrophic head, neck and spinal injuries — or die.

Yet Evenflo gave its seats passing grades. Indeed, the company's test bar was so low, the only way to fail was if the child-sized dummy ended up on the floor or the booster itself broke into pieces.[9]

25.     Evenflo has now been sued several times for by parents of children who have been severely and permanently injured due to side-impact collisions where they were not safely constrained by Evenflo's car seats.  The Report stated that, "David Sander, then an Evenflo engineer, said in a 2016 deposition in one of the previous Big Kid negligence cases: 'We side-impact test our seats…but I don't think we say that we offer any type of side-impact protection.'"[10]

26.     The Report goes on to state that "Absent a federal standard, Evenflo made up its own rules."[11]  It also notes that Evenflo went so far as to add side "wings" to the Big Kid line of car seats that, while looking as if they offered increased side protection, in fact did not.

27.     The Report continues:

Videos from the company's tests show child-sized dummies careening far outside the boundaries of the booster seat, where a child's head, neck and spine would be vulnerable. While the purpose of a seat belt is to distribute the crash forces over the strong bones of the body — the shoulders and hips — the Evenflo test instead showed the belt slipped off the shoulder and wound up taut around the soft abdomen and ribs. In real life, that could cause internal organ damage.

---

[9] *Id.*
[10] *Id.*
[11] *Id.*

7

Evenflo's testing records showed the new Big Kid with side wings did no better than the old version.

The dummies in the seat with wings were just as prone to lurching far outside the seat, with their seat belts slipping off their shoulders and straining at their abdomens.[12]

28.   The Report also notes that a pediatrician who co-authored the American Academy of Pediatrics' recommendations on car safety said of videos showing the results of Evenflo's own in-house testing of the Car Seat: "This looks horrific, and I can't imagine it being in any way shape or form better under real life circumstances."[13]  The pediatrician further stated that the types of movement shown in the videos could lead to abdominal, brain, and spinal injuries, including paralysis and death.

29.   In spite of this, all of the testing was deemed to 'pass' under Evenflo's own internal standards, which are under significantly less force than federal tests for side-impact collisions for cars.  As the report noted,

One of the federal government's tests simulates a side-impact crash by having a 3,015-pound barrier moving at 38.5 miles per hour smash into a vehicle. Another federal test involves a car pulled sideways at 20 miles per hour into a stationary pole. The Evenflo side-impact tests, by contrast, were conducted on a bench resembling a vehicle's seat that moves at 20 miles per hour and is suddenly decelerated. It has no barrier smashing into the bench and no pole.[14]

30.   As a result, as many as 18 million consumers have purchased Evenflo Big Kid car seats believing them (a) to be safe for children between 30 and 40 pounds; and (b) to be safe in side-impact collisions.  These representations are false and misleading, and consumers, including Plaintiff and the Class, either would not have purchased the Big Kid car seat or would have paid less for it had they known of Evenflo's false and misleading representations.

---

[12] *Id.*
[13] *Id.*
[14] *Id.*

**CONCEALMENT OF UNLAWFUL CONDUCT AND EQUITABLE TOLLING**

31. Plaintiff disclaims any burden to plead facts regarding the statute of limitations. By its very nature, as alleged herein, Defendant's unlawful activity was self-concealing. By Defendant's affirmative acts, misrepresentations, and nondisclosures, any applicable statute of limitations on claims asserted by Plaintiff and members of the Class have been and are tolled.

32. Further, Defendant routinely updated its false and misleading representations, so as to make it appear that their representation was, in fact, valid. These actions continued the conduct complained of until at least the publication of the Report.

33. Plaintiff and members of the Class had no knowledge of the unlawful conduct alleged in this Complaint, or of any facts that could or would have led to the discovery thereof, until at least February 2020. In the exercise of reasonable diligence, Plaintiff could not have discovered Defendant's violations of law such that suit could be brought before February 2020.

**CLASS ACTION ALLEGATIONS**

34. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All consumers in the United States who purchased Evenflo's Big Kid car seats (the "Class").

Excluded from the Class are Evenflo and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof. Moreover, this Complaint does not assert, and is not intended to assert, Class standing for personal injury claims, or any damages therefrom.

35. Plaintiff also brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a subclass defined as:

> All consumers in the Commonwealth of Kentucky who purchased Evenflo's Big Kid car seats (the "Kentucky Subclass").

Excluded from the Subclass are Evenflo and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Subclass; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof. Moreover, this Complaint does not assert, and is not intended to assert, Subclass standing for personal injury claims, or any damages therefrom.

36. Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37. **Numerosity – Fed. R. Civ. P. 23(a)(1)**. The members of the Class are so numerous that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that there are at least 18 million people who have purchased Evenflo Big Kid car seats in the United States[15] who have been damaged by Evenflo's conduct, as alleged herein. The precise number of Class members and their addresses is unknown to Plaintiff, but may be ascertained from Evenflo's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

38. **Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions

---

[15] *Id.*

10

affecting individual Class members. Even though all Class members may not have seen the exact same advertising and promotional materials for Evenflo's Big Kid car seats, the same false and misleading claims at the heart of this action were present in all of the packaging, advertising and promotional materials referenced herein. Furthermore, common questions of law and fact include, but are not limited to:

    a.    Whether Evenflo has been unjustly enriched as a result of the conduct complained of herein;

    b.    Whether Evenflo engaged in unfair, unconscionable, false, misleading, and/or deceptive labeling, advertising, marketing and/or promotion of its Car Seats;

    c.    Whether Evenflo engaged in unfair or unconscionable, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce;

    d.    Whether Plaintiff and the other members of the Class and Subclass are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount; and

    e.    Whether Plaintiffs and the other members of the Class and Subclass are entitled to equitable relief, including but not limited to restitution.

39.    **Typicality – Fed. R. Civ. P. 23(a)(3)**. Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through the uniform misconduct described above, were subject to Evenflo's unfair, false, misleading, and/or deceptive claims that accompanied each and every Big Kid car seat sold.

40.    **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)**. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other

members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

41. **Superiority – Fed. R. Civ. P. 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Evenflo, so it would be impracticable for Class members to individually seek redress for Evenflo's wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(Individually and on Behalf of the Class and Subclass)**

42. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

43. Plaintiff and the other Class members conferred a benefit upon Evenflo, in the form of the excess prices they paid for Evenflo Car Seats over and above the actual value of the product.

44. Evenflo had an appreciation or knowledge of the excess prices paid for its Big Kid car seats by Plaintiff and the other members of the Class and Subclass, as demonstrated by the fact that Evenflo's Car Seats are not suitable protection for children under 40 pounds.

45. Evenflo's acceptance or retention of these benefits is inequitable under the circumstances as outlined above.

46. Plaintiff, on behalf of himself and the other members of the Class, seek restitution or, in the alternative, imposition of a constructive trust on the funds inequitably received and retained.

## SECOND CLAIM FOR RELIEF
### Breach of Express Warranty
**(Individually and On Behalf of the Class and Subclass)**

47. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

48. Evenflo sold the Car Seat in their regular course of business. Plaintiff and Class and Subclass members purchased the Car Seat.

49. Evenflo made promises and representations in an express warranty provided to all consumers, namely that the Car Seat was safe for use for persons weighing between 30 and 110 pounds.

50. Evenflo gave this express warranty to Plaintiff and each Class and Subclass member in written form on the labels of the Car Seat.

51. Evenflo's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

52. Evenflo breached the warranty because the uniform written statement on each container of the Car Seat, that it was intended for use for persons between 30 and 110 pounds, was false.

53. The information provided on the labels was false when the sales took place and was undiscoverable to Plaintiff and the Class ad Subclass members at the time of purchase.

54. All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the Class and Subclass in terms of paying for the Car Seat. Defendants had actual notice of the false labeling information and to date have taken no action to remedy their breach of express warranty.

55. By placing the Car Seat in the stream of commerce, and by operation of law and the facts alleged herein, Evenflo also impliedly warrantied to Plaintiff and Class and Subclass members that the Product was accurately labeled in conformance with the law.

56. Evenflo's breach of warranty has caused Plaintiff and Class and Subclass members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Evenflo's breach of warranty, Plaintiff and Class and Subclass members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

57. As a result of Evenflo's breach of these warranty, Plaintiff and Class and Subclass members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

## THIRD CLAIM FOR RELIEF
**The Kentucky Consumer Protection Act, Ky. Rev. Stat. § 367.100 *et seq.***
**(Individually and On Behalf of the Kentucky Subclass)**

58. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

59. Evenflo's conduct, as alleged herein, constitutes unfair or unconscionable, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce within the scope of violation of Ky. Rev Stat. §§ 367.170(1) and (2).

60. Evenflo's unlawful conduct includes its false and misleading statements, representations, and depictions in its labeling, marketing and advertising for its Car Seats, as alleged in greater detail above.  Such conduct injured Plaintiff and each of the other Class members, in that they paid more for the falsely advertised product they purchased than they would have paid for the car seats had they known their true value.

61. Plaintiff and the other members of the Class have been injured by Evenflo's unfair or unconscionable, false, misleading, or deceptive acts or practices in conjunction with its marketing and sale of the Car Seats.

62. Pursuant to Ky. Rev Stat. § 367.220, Plaintiff and each of the other members of the Kentucky Subclass are entitled to recover actual damages, punitive damages, plus their reasonable attorneys' fees and the costs of this action.

63. Plaintiff and the other members of the Kentucky Subclass are also entitled to injunctive relief in the form of an order directing Defendant to cease its false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court order the following relief:

A.   An Order certifying the Class and Subclass as requested herein;

B.   An Order awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the other members of the proposed Class and Subclass;

C.   An Order awarding equitable relief, including: enjoining Defendant from continuing the unlawful false advertising practices as set forth herein, directing

      Defendant to retrieve existing false and misleading advertising and promotional materials, directing Defendant to engage in a corrective advertising campaign, directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution, and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

D.     An order awarding actual damages and punitive damages as allowable by law;

E.     An Order awarding attorneys' fees and costs to Plaintiffs and the other members of the Class; and

E.     Such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

DATED: February 14, 2020

                                              /s/ Michelle L. Kranz

                                              ZOLL & KRANZ LLC
                                              Michelle L. Kranz (0062479)
                                              Carasusana B. Wall (OH 0090234, MI P76722)
                                              6620 West Central Avenue
                                              Suite 100
                                              Toledo, Ohio 43617
                                              Telephone: (419) 841-9623
                                              Facsimile: (419) 841-9719
                                              michelle@toledolaw.com
                                              cara@toledolaw.com

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
Jeffrey G. Smith
Matthew M. Guiney
Lydia Keaney Reynolds
270 Madison Ave.
New York, NY 10014
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
smith@whafh.com
guiney@whafh.com
reynolds@whafh.com

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone:  (312) 984-0000
Facsimile:  (212) 686-0114
malmstrom@whafh.com


*Attorneys for Plaintiffs*